# AGREEMENT

### Between

## Teltara Inc.

### And

## Laborers' International Union of North America
## Northeast Florida Public Employees Local 630
## at Eglin Air Force Base, Florida

## Contract No. FO8651-99-D-0001

## July 1, 2002 through June 30, 2005

**EXHIBIT A TO COMPLAINT**
**SPEAKES, et al. v. TELTARA, INC**

## TABLE OF CONTENTS

ARTICLE I PREAMBLE ...................................................................................1

ARTICLE II UNION RECOGNITION...............................................................1

ARTICLE III PURPOSE AND SCOPE ..............................................................1

ARTICLE IV UNION SECURITY .....................................................................1

ARTICLE V DUES CHECKOFF AND AUTHORIZATION FORM.....................2

ARTICLE VI DISCRIMINATION CLAUSE .......................................................4

ARTICLE VII WAGES AND FRINGE BENEFITS .............................................4

ARTICLE VIII HOURS OF WORK AND CALL IN ...........................................5

ARTICLE IX HIRING OF NEW EMPLOYEES .................................................5

ARTICLE X UNION REPRESENTATION .........................................................6

ARTICLE XI STEWARD REPRESENTATION ..................................................6

ARTICLE XII CLOTHING AND EQUIPMENT .................................................7

ARTICLE XIII HEALTH AND SAFETY REQUIREMENTS...............................7

ARTICLE XIV REDUCTION IN FORCE ...........................................................7

ARTICLE XV SENIORITY ................................................................................7

ARTICLE XVI VACATIONS .............................................................................8

ARTICLE XVII HOLIDAYS ..............................................................................8

ARTICLE XVIII SICK LEAVE .........................................................................9

ARTICLE XIX SICK LEAVE RESTRICTION ..................................................10

ARTICLE XX ACCESS TO RECORDS ...........................................................10

ARTICLE XXI GRIEVANCE PROCEDURE AND ARBITRATION ...................10

ARTICLE XXII LEAVE OF ABSENCE ...........................................................11

ARTICLE XXIII FUNERAL LEAVE................................................................12

ARTICLE XXIV JURY DUTY .........................................................................12

ARTICLE XXV BULLETIN BOARD................................................................13

ARTICLE XXVI HEALTH AND WELFARE ....................................................13

ARTICLE XXVII PENSION .............................................................................13

ARTICLE XXVIII MILEAGE...........................................................................13

ARTICLE XXIX NO STRIKES – NO LOCKOUTS ..........................................13

ARTICLE XXX MANAGEMENT RIGHTS ......................................................14

ARTICLE XXXI DISCHARGE OR DISCIPLINARY ACTION .............................................14

ARTICLE XXXII TERMS OF AGREEMENT .......................................................................15

SCHEDULE "A" .......................................................................................................................17

SCHEDULE "A (1)"..................................................................................................................18

SCHEDULE B............................................................................................................................19

SCHEDULE B(1) ......................................................................................................................22

# AGREEMENT

## ARTICLE I
## PREAMBLE

The AGREEMENT made and entered into as of July 1, 2002, by and between **Teltara Inc.** (hereinafter referred to as the "COMPANY") and the **Laborers' International Union of North America, Northeast Florida Public Employees Local 630,** hereinafter referred to as the "Union." This Service Contract Agreement is specifically for the Eglin Air Force Base, Florida, Contract Number FO8651-99-D-0001 (hereinafter referred to as the "Base").

## ARTICLE II
## UNION RECOGNITION

The Company recognizes the Union as the sole and exclusive collective bargaining representative of all full-time and regular part-time Janitorial employees employed by the Company with respect to wages, hours and all other terms and conditions of employment at the Eglin Air Force Base under Contract number FO8651-99-D-0001. The Company and the Union agree that all office clerical, supervisory, managerial, administrative and professional employees and all other employees will be excluded from the bargaining unit.

## ARTICLE III
## PURPOSE AND SCOPE

It is the intent and purpose of the parties hereto to set forth herein the basic agreement covering wages, hours of work, and conditions of employment to be observed between the parties hereto, and to provide procedure for prompt, equitable adjustments of alleged grievances to the end that there shall be no interruptions or impeding of the work, work stoppages, strikes or lockouts during the life of this Agreement.

## ARTICLE IV
## UNION SECURITY

Subject to Section 8 (a) (3) of the National Labor Relations Act, as amended, all present employees of the Company covered by this Agreement who are members of the Union on the date of execution of this Agreement shall remain members of the Union in good standing as a condition of employment. Subject to Section 8 (a) (3) of the National Labor Relations Act, as amended, all employees of the Company covered by this Agreement, who are not members of the Union and all such employees who are hired hereafter, shall become and remain members of the Union in good standing as a condition of employment on and after the thirty-first (31st) working day following the beginning of their employment or on and after the beginning of the 31st working day following the date of execution of this Agreement, whichever is later.

The failure of any employee to become a member of the Union at the required time shall obligate the Company, upon written notice from the Union to such effect and to further affect that Union membership was available to such person on the same terms and conditions generally available to other members, to forthwith discharge such employees. Further, the failure of any employee to

1

comply with this requirement shall be a cause for discharge of the employee, upon written notification to the Company, by the Union, that an employee has failed to tender the appropriate dues and fees uniformly imposed upon all employees in the bargaining unit.

The Union shall indemnify the Company and save it harmless from any claim, loss, damage, cost or expense arising out of the discharge of any employee under this Article, and the Company shall not be required to make any investigations of, but shall be entitled to rely on any representation made by the Union with respect to the discharge of any employee for failure to join the Union or to maintain Union membership pursuant to this Article.

**ARTICLE V**
**DUES CHECKOFF AND AUTHORIZATION FORM**

The Company will deduct and pay to the Union the regular amount of initiation fee and Union membership dues established by the Union Constitution or by-laws from the pay of each employee covered by this Agreement who voluntarily authorizes and directs the Company to make such deductions. Each such authorization shall be in writing in the form prescribed below and shall be governed by the provisions thereof. The Union shall notify the Company in writing whom the payee of the checks for such deductions shall be, and the name and address of the person to whom such checks are to be sent. The Company shall be entitled to rely on notice until receipt of a written modification thereof.

The Union shall indemnify the Company against and save it harmless from any claim, loss, damage, cost or expense arising out of any wrongful deduction and payment of any amount under this Article.

The Company shall transmit to the Union, not later than the thirtieth (30th) day of the following month in which the deductions were made, a check for the total amount deducted, together with a statement showing the name of each employee and the amount paid on his behalf. In the event an employee does not have sufficient earnings due him in any month to cover the amount of said deductions for that month, the Company agrees to make such deductions from the earnings due the employee in future months until the employee is current in his payments. The written deduction authorization shall be in the following form:

## AUTHORIZATION FOR REPRESENTATION

**Terence M. O'Sullivan**
General President

**Armand E. Sabitoni**
General Secretary-Treasurer

Headquarters
905 - 16th Street, N.W.
Washington, D.C. 20006-1765

City _____ Date_____

I, the undersigned hereby designate Local Union No. 630 of the Laborers' International Union of North America, AFL-CIO as my collective bargaining representative in all matters pertaining to labor conditions, wages and hours of employment. This authorization shall apply to the Employer for whom I am employed on this date and all other Employers for whom I may become employed after this date. This authorization is signed by me for the purpose of securing for the Union voluntary recognition and negotiation rights with my Employer and with any future Employer. It may be revoked only by me, through written notice to the Union.

Signature _____   Telephone No. _____
         Name Of Employee

## MEMBERSHIP APPLICATION

(If not yet a member) I do hereby apply for membership in Local Union No. 630 affiliated with the above International Union and agree to abide by all the provisions of the Constitution and By-Laws of said Local and the International Union.

Signature _____   Telephone No. _____
         Name of Employee

Social Security No. _____  Date of Birth _____  Shift _____

Address _____
         No.        Street        City         State        Zip Code

Employer _____  Division or Department _____

Shift _____

## DUES CHECKOFF AUTHORIZATION AND ASSIGNMENT
### Local Union No. 630 affiliated with
## THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO

Name of Employer _____

I, _____ , do hereby assign to Local Union No. 630,
    (print name)

Laborers' International Union of North America, AFL-CIO, such amounts from my wages as shall be required to pay an amount equivalent to the initiation fees, readmission fees, and membership dues of the Local Union as may be established for its members from time to time. My Employer,

3

including my present Employer and any future Employer, is hereby authorized to deduct amounts from my wages and pay the same to the Local Union and/or its authorized representative, in accordance with the Collective Bargaining Agreement in existence between the Union and my Employer.

This authorization shall become operative upon the effective date of each collective bargaining agreement entered into between my Employer and the Union.

This authorization shall be irrevocable for a period of one (1) year, or until termination of the collective bargaining agreement in existence between my Employer and the Union, whichever occurs sooner; and I agree and direct that this authorization shall be automatically renewed and shall be irrevocable for successive periods of one (1) year each, or for the period of any subsequent agreement between my Employer and the Union, whichever shall be shorter, unless written notice is given by me to my Employer and the Local Union not more than twenty (20) days and not less than ten (10) days prior to the expiration of each period of one (1) year, or of each applicable collective bargaining agreement between my Employer and the Union, whichever occurs sooner. For the effective period of this checkoff authorization and assignment, and to the extent permitted by law, I hereby waive any right I may have to resign my union membership. Furthermore, this checkoff authorization shall continue in accordance with the above renewal and revocation provisions irrespective of my membership in the Union.

Union dues and fees are not tax deductible as charitable contributions for Federal income tax purposes. However, they may be tax deductible under other provisions of the Internal Revenue Code. For example, they may be tax deductible as an "unreimbursed employee expense, " one of the miscellaneous job expenses that are deductible on Form 1040, Schedule A, "Itemized Deductions." They may also be tax deductible as ordinary and necessary business expenses.

This assignment has been executed this _____day of _____, 20__.

Signature _____Telephone No. _____

Name of Employee _____

## ARTICLE VI
## DISCRIMINATION CLAUSE

The Company and the Union both recognize their responsibilities under Federal, State and Local law pertaining to fair employment practices regarding race, color, religion, national origin, disability, age or sex.

Where the designations man, he, etc. appear, it is accepted and understood by the parties to this Agreement that these terms apply equally to both males and females.

## ARTICLE VII
## WAGES AND FRINGE BENEFITS

Section 1.    Employees covered by this Agreement shall be paid wages and receive fringe benefits as provided in Schedule "A" attached hereto.

4

Section 2.    The pay period and payday shall normally be twice a month but may be modified based on the regular payroll procedures of the Company with at least a two-week prior notification to the Union. The employees will normally receive their checks before the end of the employees' shift.

## ARTICLE VIII
## HOURS OF WORK AND CALL IN

Forty (40) hours a week of five eight (8) hour days shall constitute the workweek. This shall not be deemed to constitute a guarantee by the Company of any particular number of hours per day or per week to any employee. All hours worked in excess of 40 hours per week shall be paid for at the rate of time and one-half. Overtime pay shall not be pyramided.

A part-time employee shall be one who works less than 40 hours per week.

The Company shall have the right to schedule working hours and to make revisions in such schedule to meet its needs or the needs of the Government.

Any employee reporting for work at the regular starting time when he has not been notified not to report and for whom no work is provided, shall receive two (2) hours pay at his regular hourly rate.

Any employee reporting for work at the regular starting time, and who is placed at work, shall be paid for no less than four (4) hours at his regular rate, even though four (4) hours have not been worked. If more than four (4) hours are worked in any one (1) shift, an employee shall receive pay for actual hours worked. Any employee called in outside his regular working hours, or on his scheduled day(s) off, shall be guaranteed a minimum of three (3) hours pay at the regular rate.

No employee scheduled for work or called in by the Company shall be required to stand by waiting for an assignment without being paid his regular straight-time rate during such waiting period, unless the Company took reasonable steps to notify such employee that there would be no work or that his starting time had been changed.

Each employee shall receive a lunch period without pay of no less than a half hour and not more than one hour and, if scheduled to work more than six hours, two paid fifteen-minute breaks, which can be combined with their lunch break.

Employee off work due to personal injury, illness, or death in the immediate family will notify the Company office by phone or letter at Eglin Air Force Base, Florida, at least twenty-four (24) hours in advance of the shift on which they will return to work for purpose of work scheduling.

## ARTICLE IX
## HIRING OF NEW EMPLOYEES

The Company's Project Manager shall notify the Union's Shop Steward within a reasonable time not to exceed five (5) working days of any new employees hired.

## ARTICLE X
## UNION REPRESENTATION

The Company agrees that the Union may designate not more than one (1) employee at any time as representative elected or appointed to a Local Union office or as a delegate to any Union activity necessitating a leave of absence. Upon written request from the employee, supported by a written statement by the Union, such employee will be granted a leave of absence without pay for the time he is required to be absent on Union business, provided not more than one classification is absent at one time and provided further, such request be submitted to the Company at least seven (7) days prior to commencement of the leave of absence.

A shop steward serving as representative of the Union in connection with the processing of grievances by employees covered by this Agreement in each instance shall first obtain permission from his immediate supervisor and such permission shall be granted as soon as conveniently possible without interfering with performance of the Company's obligations under Government Contract.

## ARTICLE XI
## STEWARD REPRESENTATION

A.     The Union shall supply the Company, in writing, and shall maintain on a current basis, a complete list of all authorized stewards (which shall not exceed two (2) on each shift, consisting of a primary shop steward and his alternate) together with the designation of the group of employees each is authorized to represent. In no event shall the representation of employees of processing of grievances interfere with the performance of work or the fulfillment of the Company's obligation under its Government Contract. The Company shall also be kept advised in writing by the Union of names of its officers and representatives who are authorized to act on its behalf. If the Company plans to transfer a steward, officer or representative from one shift to another, it will make a reasonable effort to advise the Union thereof at least two (2) days prior to taking such action. Subject to any regulations or requirements established by the Government with respect to Government property, authorized agents of the Union shall have access to the Company's establishment during working hours for the purpose of adjusting disputes, investigating working conditions, and ascertaining that the Agreement is being adhered to, provided, however, that such visits shall not interfere with the performance of any employee's work or the fulfillment of the Company's obligation under its Government Contract. No employee shall be discriminated against or discharged for exercising any rights under the National Labor Relations Act, as amended.

B.     The Shop Steward shall not interfere with the management of the business or direct any work of any employee, but may advise the Company of any violations of the Agreement and also notify the employee participating therein.

C.     Prior to leaving the work area, the Shop Steward will request permission from the supervisor. The Shop Steward will not leave his work area during rush hours.

D.     During his term of office, the Shop Steward shall be entitled to top seniority at the building, for the purpose of layoff, shift, preference and recall only; provided he is qualified to do

the required work.  Upon termination of his term, he shall be returned to his regular seniority status. In the event the Union is unable to secure a Shop Steward for any given shift, the Business Manager or his designee shall act as the Steward for purposes of the grievance procedure contained in the Agreement.

## ARTICLE XII
## CLOTHING AND EQUIPMENT

Employees who are required by the Company to wear uniforms, special clothing or to have special equipment, will be furnished those items at no cost to the employee. The Company will initially issue wash and wear uniforms to be maintained by the employee.  The employee must wear clean and untorn uniforms.  Uniforms will be replaced under normal wear and tear.  When the employee leaves the company, the uniforms must be returned.

## ARTICLE XIII
## HEALTH AND SAFETY REQUIREMENTS

The Company and the Union agree that they will cooperate in the enforcement of health and safety standards and rules that may be established by the Company in compliance with OSHA or other statutory regulations.

## ARTICLE XIV
## REDUCTION IN FORCE

If it is reasonable and possible to do so, the Company will notify the Union at least twenty-four (24) hours prior to any reduction in force, including such details with respect thereto as are available.  When an employee is discharged or laid off, he shall be paid by check for any wages owing to him within the next scheduled pay period following discharge or layoff, mailed by registered letter to his last known address, at his next scheduled payday, provided, however, the Company may deduct any Union dues pursuant to ARTICLE V hereof that are owing as of the date of termination.  When the Company wishes to recall laid-off employees, it shall attempt to contact the employee by telephone, it shall telephone the Local Union, and it shall mail a letter to the employee's last known address.  The employee may be required to respond to and be available for work within forty-eight (48) hours of the above procedure.  All employees are required to keep the Company informed of their current address and telephone number.

## ARTICLE XV
## SENIORITY

Section 1.    The Company recognizes seniority which shall be based upon the length of continuous services with previous, present and succeeding Companies at the same federal facility according to the Company's and Union's record as an important factor to be considered by it in shift assignments, promotions within the bargaining unit, demotions, layoffs, and recalls after layoffs within the unit.  It is understood, however, that the Company may also consider efficiency and capability, provided that when these factors are equal, seniority shall prevail.

Section 2.     No employee shall acquire any seniority rights until the previous or present Company has continuously employed him for a period of thirty (30) calendar days.

Section 3.     A break in seniority shall occur with the following events:

A - If an employee quits.

B - If an employee is discharged for just cause.

C - If an employee takes an unauthorized leave of absence.

D - If an employee is laid off for more than nine (9) months.

E - If an employee leaves due to military PCS assignment.

Section 4.     The Company shall supply the Union with an up-to-date seniority list, which shall be reviewed each six (6) months.

Section 5.     Every new employee shall be on probation for a period of sixty (60) days and during this probationary period an employee may be dismissed for any reason considered justifiable by the Company.   Any employee so dismissed shall not have a right to invoke the grievance and arbitration procedure of this Agreement.

## ARTICLE XVI
## VACATIONS

Effective July 1, 2002, each employee of the Company who has been continuously employed at the Eglin Air Force Base covered by this Agreement shall receive paid vacations as identified in Schedule A(1).

Employees may schedule their vacations in advance to coincide with the efficiency of the operation of the Company.  Should conflict in scheduling arise, seniority will prevail.

Length of service includes the whole span of continuous service with the present (successor) contractor and with predecessor contractors in the performance of similar work at the same federal facility.   It is the responsibility of the Company to obtain dates of hire and continuous employment and anniversary dates from the predecessor contractor and/or the contracting agency, and/or the Union and to provide such information to the Union and to the employees.   If an employee disagrees with the information provided by the company or the union, it is his or her responsibility to provide proof establishing such dates through other sources.

## ARTICLE XVII
## HOLIDAYS

Employees covered by this Agreement shall be entitled to the number of paid holidays as set forth in Schedule A. The following days are observed as paid holidays:

8

| | |
|---|---|
| New Years Day | Labor Day |
| Martin Luther King's Birthday | Columbus Day |
| President's Day | Veterans Day |
| Memorial Day | Thanksgiving Day |
| Independence Day | Christmas Day |

Employees shall be paid for the holidays in the following manner: Employees shall be paid for a holiday based on the fraction of a full-time schedule (40 hours) for which they received compensation for the preceding workweek (not to exceed 40 hours). For example, if an employee received compensation for 30 hours for the week preceding the holiday, his holiday pay would be 30/40 of eight hours (i.e., six hours) times his regular rate of pay.

Any employee, who is absent without an acceptable excuse on his scheduled workdays immediately preceding and following the holiday, shall forfeit his right to be paid for such holiday. If an employee is prevented from working on the scheduled workdays immediately preceding and following the holiday because of illness attested to by a physician or death in his immediate family, such fact shall constitute an acceptable excuse. (The immediate family being spouse, parents, brother, sister and children.)

The Company may substitute for any of the named holidays a different day off with pay, provided, however, that the Company give advance reasonable notice thereof to the employees involved and to the Union. Employees who are required by the Company to work on any of the named holidays within their workweek shall be paid for their workday plus the pay they would be entitled to for the holiday.

## ARTICLE XVIII
## SICK LEAVE

Sick Leave is defined as absence of an employee from work by reason of verified illness or accident which is non-work connected and not eligible for compensation under the Workers' Compensation Laws of the state of Florida.

Eligibility and Benefits

An employee who has completed his probationary period and is absent from work is eligible to receive paid sick leave at his regular rate of pay in accordance with Schedule A(1).

Sick leave shall be paid on a current basis, if substantiated by the employee, in accordance with the Company's written sick leave policy and in accordance with the provisions of this Agreement. Employees may be required to provide medical proof of illness certifying any absence in excess of two (2) days. An employee will be counseled (non-disciplinary) whenever a pattern clearly develops where an employee is suspected of abusing sick leave. Further documented abuse of sick leave after the employee has been counseled, shall require proof of illness the 1st day of absence in order to receive sick pay as provided in Article XIX.

Employees leaving the employment of the Company for any reason, other than being terminated for cause, shall be paid in one lump sum the amount of all accrued, unused or unpaid sick leave.

Employees off work due to personal injury, illness, or death in the immediate family will notify the Company office by phone or letter at the Eglin Air Force Base, Florida, at least twenty-four (24) hours in advance of the shift for purpose of work scheduling.

## ARTICLE XIX
## SICK LEAVE RESTRICTION

The Company shall provide counsel and written warning concerning patterns of sick leave abuse and if such patterns are not corrected in a period of six (6) months, only then the employee shall be placed on sick leave restriction.

Sick leave restriction may be implemented when there is a reason and proof that the employee has abused sick leave privileges during the previous six (6) months.

At the end of three (3) months sick leave restriction the employee shall be reevaluated by the Company as to whether or not removal or continuance of the sick leave restriction is recommended.

When the employee's record of sick leave has not reflected abuse at the end of three months, the medical certification requirement shall be removed and the employee will be so advised in writing.

## ARTICLE XX
## ACCESS TO RECORDS

Section 1.    Access to employee personnel records and other official files maintained by the Company will be safeguarded.  Only authorized staff shall have access to an employee's personnel and other official files.

Section 2.    Upon giving reasonable written notice, an employee shall have the right to review his own personnel files maintained by and under the control of the Company.

## ARTICLE XXI
## GRIEVANCE PROCEDURE AND ARBITRATION

The Union shall be the sole judge as to whether to process any grievance filed by an employee.

Section 1.    With respect to any dispute, complaint or grievance arising out of the interpretation or application of Article II, the Company hereby acknowledges that the Union may, at its option, bypass Steps Two and Three of this grievance procedure and proceed immediately to Step Four.  The parties to this Agreement, in the interest of resolving all disputes, complaints or grievances in connection with the interpretation or application of the terms of this Agreement, have settled upon the following orderly and peaceful procedure:

Section 2.    STEP 1:    The matter of concern shall be formalized in writing and submitted by the aggrieved's representative to the immediate supervisor.  The grievance procedures shall be invoked within seven (7) working days of the occurrence of the incident giving rise to the grievance.  The immediate supervisor will provide his answer in writing to the aggrieved within

seven (7) working days. A copy of the decision will be provided to the Union representative. Most grievances should be resolved at this level of the grievance procedure.

STEP 2:    If the matter is not resolved in Step 1, the aggrieved's representative shall submit the matter in writing to the Project Manager or appropriate individual with authority to make decisions, within seven (7) working days of receipt of the decision as described in Step 1. The Project Manager will make every effort to resolve the matter at this level and may meet with the grievant and union representative(s) involved in the process of the case within (7) working days. A copy of this decision will be provided to the Union Representative.

STEP 3:    If the matter is not resolved in Step 2, within seven (7) working days after receipt of the written decision, the grievant's representative shall submit the matter in writing to the President of the Company or designee. The Company shall give a written response within seven (7) working days. If no satisfactory settlement is arrived at within the seven (7) day period, either party may refer the matter to Step Four, Arbitration.

STEP 4:    The party invoking provisions of Step Four shall, within seven (7) working days, request in writing (copy to other party), the Federal Mediation and Conciliation Service to supply the parties with a list of five (5) arbitrators. The selection of an arbitrator and the conduct of the arbitration proceedings shall be in accordance with the procedure of the Federal Mediation and Conciliation Service. Upon receipt of the list of arbitrators, the parties hereto shall meet within a period of seven (7) workdays from the date thereof and invoke the following procedure to arrive at an impartial arbitrator. The party desiring arbitration shall strike the first name, notifying the other party of such action, and each party in turn then striking one name until one name only remains, who shall be designated as the impartial arbitrator. The procedures to select an arbitrator shall take place at the office of either party. The decision of the arbitrator shall be final and binding upon both parties, provided, however, that the arbitrator shall be empowered only to interpret and apply the provisions of this Agreement, and shall have no authority to add to, subtract from or modify any provisions of this Agreement. Wages are not subject to arbitration. Each party shall bear its own cost in connection with the arbitration, including the cost of any transcript desired by it. The fee and expense of the arbitrator shall be borne by the parties equally.

## ARTICLE XXII
## LEAVE OF ABSENCE

Section 1.    PERSONAL LEAVE OF ABSENCE

A personal leave of absence without pay, for reasonable cause, as determined by the Company, may be granted for a period up to ninety (90) calendar days, with written approval of the employee's supervisor at least fifteen (15) days in advance of such leave of absence, providing the employee can be spared from his regularly assigned job duties. Employees, who are away for a period longer than the term of the leave of absence, shall be considered to have voluntarily terminated their employment with the Company. Employees shall not receive holiday pay for any holiday which falls during the period they are on leave without pay. Employees on leave of absence without pay shall not receive any accrued vacation for that period of absence.

Section 2.    MILITARY LEAVE OF ABSENCE

11

(a)     The Company and the Union agree to abide by the provisions of the Selective Service Act, and the Veteran's Re-employment Act, or any other such applicable law insofar as the provisions of said Acts apply to the rights of employees and the obligations of the Company.

(b)     Employees who are members of the National Guard and Military Reserve Units shall be granted necessary time off, without pay, in order that they may fulfill their military obligations.     These employees must notify their supervisor immediately upon receiving notifications of training periods, or other obligations, requiring a military leave of absence. Employee may elect to use earned vacation benefits if eligible during periods of military service.

(c)     Active military personnel shall not be granted any leave of absence for any military PCS assignments by their military agency, and an employee leaving his/her work due to a PCS assignment shall lose his/her seniority rights.

Section 3.     FAMILY AND MEDICAL LEAVE ACT

The Company will comply with the provisions of the Family and Medical Leave Act.  Nothing contained in this Agreement is intended to interfere with or impede the Company in meeting its obligations under the Family and Medical Leave Act, including the ability of the Company to require the use of paid time off when applicable.

Section 4.     MEDICAL TREATMENT

The Company provides Workers' Compensation coverage for employees who sustain an injury or contract a sickness covered by Workers' Compensation.  The Company will pay the injured or sick employee the difference between hours actually worked and hours scheduled on the date of the compensable injury.

## ARTICLE XXIII
## FUNERAL LEAVE

Bereavement Leave as identified in Addendum (A) shall be recognized as follows:  An employee who has completed his/her probationary period and who has a death in his/her immediate family defined as his/her spouse, parent, brother, sister, children, grandchildren, or a member of the immediate family through adoption or guardianship shall be paid up to and including 3 days pay at their regular rate for time missed within 1 week of the funeral.  There will be one day of paid leave granted to attend the funeral of grandparents and/or stepparents.  (Documentation may be required to show that legal adoption or guardianship does exist when death occurs to a family member in this category.)

## ARTICLE XXIV
## JURY DUTY

An employee who has completed his probationary period and who serves on jury duty shall be compensated by the Company in the amount of the difference between his regular rate for regular scheduled workdays lost, and the most received as juror's fee not to exceed six (6) days. Whenever the employee is temporarily excused from jury duty by the court on his scheduled

workday, he shall advise his supervisor as promptly as possible and stand ready to report for work if requested by the Company. The receipt of a subpoena or the notice to report for jury duty must be reported immediately to the appropriate supervisor and the Company may request that the employee be excused or exempted from such jury if, in the opinion of the Company, the employee's services are essential at the time of the proposed jury service.

## ARTICLE XXV
## BULLETIN BOARD

The Company will provide designated bulletin boards with adequate space for the posting of Union notices. Such Union notices are not subject to prior review by management. The Union shall not post any derogatory information against the Company.

## ARTICLE XXVI
## HEALTH AND WELFARE

The Company shall contribute for each hour for which an employee covered by this Agreement is entitled to pay to the Laborers' National Health and Welfare Fund in accordance with Schedules (A & B) of this Agreement.

## ARTICLE XXVII
## PENSION

The Company shall contribute, for each hour for which an employee covered by this Agreement is entitled to pay, to the Laborers' International Union of North America's National (Industrial) Pension Fund in accordance with Schedules (A & B) to this Agreement.

## ARTICLE XXVIII
## MILEAGE

The Company shall pay mileage in accordance with schedule A of this Agreement.

## ARTICLE XXIX
## NO STRIKES – NO LOCKOUTS

Section 1.    It is the intent and purpose of the parties hereto, set forth herein, the basic Agreement covering wages, hours of work, and other terms and conditions of employment to be observed by the parties, and to provide a procedure for the prompt and equitable resolution of disputes and grievances arising between the parties. Accordingly, it is agreed that there shall be no interruptions in, or impediments to, the Company's operations, or any stoppages, strikes, or that the Company shall lock out the employees during the life of this Agreement arising out of such dispute or grievance.

Section 2.    It is agreed that in all cases of any unauthorized strikes, slowdowns, walkouts, sympathy strikes, or any other unauthorized acts of employees of the Company, or of any affiliated Local Union and/or Union Council, or official thereof, the Union shall promptly undertake to induce employees to return to their jobs, and to process any dispute under Article

XXI, Grievance Procedures. No liability shall attach to the Union unless, and until, any such unauthorized act has been authorized by the Union.

## ARTICLE XXX
## MANAGEMENT RIGHTS

The Company retains certain rights, powers, and responsibilities, which are exclusively vested in the Company except only as they may be subject to specific and express obligations of this Agreement. Among these rights, powers, and responsibilities, but not wholly inclusive, are all matters concerning or related to the management and administration of the business, and the direction of the working forces, including (but not limited to) the right to discipline, suspend or discharge for just cause; to lay off for lack of work or for any other legitimate reason; to hire, classify, transfer, assign work, promote, demote, or recall; to make and enforce reasonable rules and regulations; to determine the starting and quitting time and the number of hours to be worked; to determine the products, processes, and extent of the business or production, the types and quantities of machinery, equipment and materials to be used, the nature, extent, duration, character and method of operation, the right to determine the number, utilization and kind of personnel and quality and quantity of workmanship and work required to ensure maximum mobility, flexibility and efficiency of operations; to establish and enforce fair production standards; and to determine the size, number and location of its facilities. The Company reserves the right to contract or subcontract any other work provided that the work is not used for the purpose of undermining the Union nor to discriminate against its members. All of the above rights which are vested exclusively in the Company and all rights not specifically relinquished by the Company in this Agreement shall remain the Company's.

## ARTICLE XXXI
## DISCHARGE OR DISCIPLINARY ACTION

Discharge or disciplinary action shall be based on just and sufficient cause, with a full explanation to the employee in written form, if so requested in writing by the employee, at the time of discharge or disciplinary action.

An employee's steward if requested shall be present:

    a)    when a disciplinary demotion, suspension, layoff or discharge is being imposed; or

    b)    when a disciplinary warning of which a written record will be made is given during which an employee is advised that continuous misconduct will result in further disciplinary action. A copy of such a warning shall be provided to the Union (steward or Agent) within two (2) days of action taken. This also applies to removals and suspensions.

Weingarten Rights: If any Company representative conducts any meeting or interrogation and the employee has a reasonable belief that discipline or other adverse consequences may result from what is said, such employee has the right to:

    A.    Request union representation.

B.   If such request is denied, the employee has the right to refuse to answer questions without fear of reprisal.

C.   If any management supervisor contemplates a disciplinary action when questioning or counseling an employee, the employee must be informed of their rights to union representation.

It is agreed that employees have a right to be represented, meet and confer with union representatives during duty time, if such request is presented to the appropriate officials.

Any disciplinary action taken by the Company shall be subject to the grievance and arbitration provisions.

## ARTICLE XXXII
## TERMS OF AGREEMENT

This Agreement shall remain in full force and effect from July 1, 2002, until June 30, 2005 and from year to year thereafter unless written notice is given by the Union or the Company ninety (90) days prior to any expiration date of its desire to negotiate wages, fringes, modify, amend or terminate this Agreement.

Schedule A, attached hereto, will be opened annually for renegotiating wages and fringes as set forth in said schedule.  Said negotiations shall commence at least two (2) months prior to the Agreement's anniversary date.

In the event that provisions of this Agreement shall, at any time, be declared invalid by a Court of competent jurisdiction or become invalid by virtue of any State or Federal Law, rule, or regulation, such event shall not invalidate the entire Agreement, it being the express intention of the parties hereto that all other provisions not so invalidated shall remain in full force and effect.

Open
Ended

15

IN WITNESS WHEREOF, the parties hereto have executed this Agreement this 12th day of June, 2002.

| | |
|---|---|
| **Teltara Inc.**<br>**16100 No. Greenway-Hayden Loop**<br>**Suite 400**<br>**Scottsdale, AZ  85260-1778** | **Laborers' International Union of North America,**<br>**Northeast Florida Public Employees Local 630**<br>**550 Balmoral Circle N., Suite 101**<br>**Jacksonville, Florida  32318** |

BY: _Ralph B Wahlberg_

Date: _12 June 02_

Witness: _____

Date: _12 June 02_

BY: _____

Date: _6-12-02_

Witness: _Marie Wrehn 6-12-02_

Date: _6-12-02_



16

## SCHEDULE "A"

### LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
### NORTHEAST FLORIDA PUBLIC EMPLOYEES LOCAL 630, AFL-CIO
### AND TELTARA , Inc.
### FOR WORK PERFORMED UNDER THE SERVICE CONTRACT FO8651-99-D-0001 AT
### Eglin Air Force Base, Florida

| ITEM | CLASSIFICATION | EFFECTIVE RATE 7/1/01 | EFFECTIVE RATE 7/1/02 |
|---|---|---|---|
| WAGES | Housekeeping Aide 1 | $10.50 | $10.50 |
| | Group Leader | $10.90 | $10.90 . |
| HEALTH AND WELFARE | | $2.40 per hour paid | $2.50 per hour paid |
| PENSION | | $1.00 per hour paid | $1.10 per hour paid |
| VACATION | | See Schedule A(1) | See Schedule A(1) |
| SICK LEAVE | | See Schedule A(1) | See Schedule A(1) |
| HOLIDAYS | | 10 days | 10 days |
| BEREAVEMENT | | 3 days/immediate family | 3 days/immediate family |
| MILEAGE | | $.30 per mile | $.30 per mile |

The Parties have negotiated and agreed to the above changes in the Articles covering wages and fringe benefits under the provisions established in the Agreement. In the event there are conflicts between the language of the CBA and this Schedule A and A(1), the language of the Schedules shall apply.

$1.00 AH (168)
7/1/01 - 6/30/02

$1.10AH (296)
7/1/02 - 6/30/05

17

## SCHEDULE "A (1)"

Each contract year (July 1) employees, who are employed by the Company on that date, will be credited with one hundred eighty-four (184) hours of paid benefit leave. The vacation portion of this paid leave will be one hundred twenty four (124) hours and must follow the guidelines set forth herein and in the vacation article of the CBA. Employees must have worked a full year on the job site in order to be eligible for vacation. Employees are to schedule their vacations in advance to coincide with the efficiency of the operation of the Company. Should conflict in scheduling arise, seniority will prevail. Assuming the vacation is reported by the employee and accrued vacation is available, vacation pay due will be paid at the same time as the pay for hours worked for the pay period in which the vacation was taken. Accrued unused vacation shall be paid on the employee's anniversary date.

The sick portion of this paid leave will be sixty (60) hours and must follow the guidelines set forth herein and in the sick pay article of the CBA. The formula for paying sick leave for those employees who were employed on July 1 of each contract year shall be as follows:

Sick Pay

Employees who perform work during a pay period in accordance with the CBA will be paid 2.5 hours (60 hours ÷ 24 pay periods per year = 2.5 hours each pay period) of sick pay for each completed pay period.

The Parties have negotiated and agreed to the changes in the attached Schedule "A" and "A(1)" covering wage and fringe benefits under the provisions established in the collective bargaining agreement.

**TELTARA, INC.**
16100 No. Greenway-Hayden Loop
Suite 400
Scottsdale, AZ  85260-1778

**Northeast Florida Public Employees Local 630**
**Laborers' International Union of North**
**America, AFL-CIO**
550 Balmoral Cir. N., Suite 101
Jacksonville, Florida 32218

By: _Ralph B Wohlberg_  _12 Jun 02_
                                         Date

_____  12 June 02
Witness

By: _____  6-12-02
                                         Date

_Margie Wickersham_  6-12-02
Witness

18

## SERVICE CONTRACT AGREEMENT

## SCHEDULE B

## PENSION FUND, HEALTH AND WELFARE BENEFIT FUNDS

The Company has agreed to make pension fund contributions on behalf of every employee covered by the Agreement. This schedule sets forth more particularly the terms and conditions of the Company's contribution obligations to these Funds, subject to any rights reserved by the Fund's trustees to accept or not accept the unit of employees covered by the Agreement into participation.

Section 1:  LIUNA National (Industrial) Pension Fund

A. The Company shall contribute to the Laborers' International Union of North America National (Industrial) Pension Fund for each hour for which an employee covered by this Agreement is entitled to pay, including hours of paid vacation, paid holidays, and other periods for which pay is paid or owed to an employee. The hourly contribution rate shall be the rate set forth in Schedule "A" to the Agreement. Contributions to the Fund for an employee shall commence with the employee's first day of employment in a classification covered by the Agreement.

B. Contributions to the Fund shall be due on a monthly basis and specifically by the twentieth (20th) day of the first month following the month during which the contributions accrued, unless otherwise expressly required by the Fund's Board of Trustees. The Company shall also submit to the Fund on a monthly basis such contribution reports as the Board of Trustees may require to verify the amount of contributions owed (if any) for the preceding month. Such reports shall be submitted to the Fund on the same schedule as contributions, and shall be submitted, even if the employees performed no work and no contributions are owed, to the Fund for the month covered by the report.

C. The Fund shall have the right and authority to have a certified public accountancy firm audit the payroll and other records of the Company for purposes of verifying the accuracy of the contributions made to the Fund by the Company, verifying employee eligibility, and other purposes necessary for administration of the Fund. The Company and the Union also agree to provide the Fund with any and all truthful information necessary for administration of the Fund.

D. All contribution payments shall be made payable to the LIUNA National (Industrial) Pension Fund and sent to the Fund at 905 16th Street, N. W., Washington, D. C. 20006.

E. If the Company fails to submit contributions or contribution reports to the Fund when due, it shall be considered in default and shall be subject to charges for interest, liquidated damages, attorneys' fees, costs, audit fees, and other costs of collection in accordance with the Fund's Agreement and Declaration of Trust. The Fund shall have the right to take any and all lawful action to secure payment of contributions and submission of the commencement of legal proceedings against the Company and others acting on its behalf. The Company's obligations with respect to the Fund shall not be subject to any grievance or arbitration procedure provided

19

under the Agreement. The Union shall have the right to take whatever steps it deems necessary to secure compliance by the Company with its contribution obligations.

      F.      The Company and the Union agree to accept, be bound by, and comply fully with a copy of the Fund's Agreement and Declaration of Trust, a copy of which has been provided to both.

Section 2: Laborers' National Health and Welfare Fund

      A.      Each employee covered by the Agreement shall be covered by the following benefit plan(s) offered by the **Laborers' National Health and Welfare Fund**, subject to the plan's eligibility rules and the Fund's right to withhold payment of benefits in the event that the Company fails to make the contributions required hereunder or otherwise defaults on its obligations hereunder.

      [ ]     PLAN I
      [ ]     PLAN II
      [ ]     PLAN III
      [ ]     PLAN V
      [ ]     PLAN VII
      [ ]     PLAN VIII

      B.      The Company shall contribute to the Fund for each hour for which each employee covered by this Agreement is entitled to pay, including hours of paid vacation, paid holidays and other periods for which pay is paid or owed to an employee. The hourly contribution rate shall be the rate set forth in Addendum A to the Agreement. Contributions to the Fund for an employee shall commence with the employee's first (1st) day of employment in a classification covered by the Agreement.

      C.      Contributions to the Fund shall be due on a monthly basis and specifically by the twentieth (20th) day of the first (1st) month following the month during which the contributions accrued, unless otherwise expressly required by the Fund's Board of Trustees. The Company shall also submit to the Fund on a monthly basis such contribution reports, as the Board of Trustees may require to verify the amount of contributions owed (if any) for the preceding month. Such reports shall be submitted even if the employees performed no work and no contributions are owed to the Fund for the month covered by the report.

      D.      The Fund shall have the right and authority to have a certified public accounting firm audit the payroll and other records of the Company for purposes of verifying the accuracy of the contributions made to the Fund by the Company, verifying that the correct amount of contributions or other payments due has been or will be paid. Such audits may include records relating to employees other than Participants to the extent deemed necessary or appropriate to verify Contributions. If a deficiency is determined by the audit, the Board of Trustees may assess the cost of the audit against the delinquent Employer. No use shall be made of information gathered during an audit other than uses relating to the administration of the Fund. The Company and the Union also agree to provide the Fund with any and all truthful information necessary for administration of the Fund.

E.     All contribution payments shall be made payable to the **"Laborers' National Health and Welfare Fund"** and sent to Fund at **PO Box 94402, Chicago, IL 60690-4402**.

F.     If the Company fails to submit contributions, contribution reports or other payments to the Fund when due, the Company shall be considered in default and shall be liable to the Fund for interest at the rate of one-and-one half percent (1½%) per month compounded from the due date through the date of payment, as well as for all expenses of collection incurred by the Fund, including attorneys' fees and court costs. The Fund shall have the right to take any and all lawful action to secure payment of delinquent contributions and other amounts due, including the commencement of legal proceedings against the Company and others acting on its behalf. If legal proceedings are initiated against the Company in default, the Company shall also be liable for liquidated damages in an amount equal to twenty percent (20%) of the contributions past due. The Company's obligations with respect to the Fund shall not be subject to any grievance or arbitration procedure provided under the Agreement. The Union shall have the right to take whatever steps it deems necessary to secure compliance by the Company with its contribution obligations.

G.     Notwithstanding the foregoing, it is understood that the Fund's Board of Trustees shall have the right to modify the contribution rates required to maintain a particular level of benefits during the term of the Agreement. If the Board of Trustees exercises that right, the Company shall have the right to terminate participation in the Fund subject to any bargaining or other legal obligations it may owe to the Union. Participation shall not be deemed terminated under the terms of this paragraph until written notice thereof is received in the office of the Fund's Administrator.

H.     The Company and the Union agree to accept, be bound by and comply fully with the terms of the Fund's Participation Agreement and Declaration of Trust, a copy of which has been provided to both.

21

N968-3
"A"
E3

## SCHEDULE "A"
### NORTHEAST FLORIDA PUBLIC EMPLOYEES LOCAL 630
### LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO
### AND TELTARA, Inc.
### FOR WORK PERFORMED UNDER THE SERVICE CONTRACT FO8651-99-D-0001 AT

Eglin Air Force Base, Florida

| ITEM | CLASSIFICATION | EFFECTIVE RATE 7/1/02 | EFFECTIVE RATE 7/1/03 |
|---|---|---|---|
| WAGES | Housekeeping Aide I | $ 10.50 | $ 10.50 |
|  | Group Leader | $ 10.90 | $ 10.90 |
| HEALTH AND WELFARE |  | $ 2.50 per hour paid (Plan II) | $ 2.85 per hour paid (Plan II) |
| PENSION |  | $ 1. 10 per hour paid | $ 1 .15 per hour paid |
| VACATION |  | See Schedule A(1) | See Schedule A(1) |
| SICK LEAVE |  | See Schedule A(1) | See Schedule A(1) |
| HOLIDAYS |  | 10 days | 10 days |
| BEREAVEMENT |  | 3 days/immediate family | 3 days/immediate family |
| MILEAGE |  | $.30 per mile | $.30 per mile |

The parties have negotiated and agreed to the above changes in the Articles covering wages and fringe benefits under the provisions established in the Agreement. In the event there are conflicts between the language of the CBA and this Schedule A and A(1), the language of the Schedules shall apply.

1.10 AH    396
— 6/30/03

1.15 AH    587
7/1/03- 6/30/05

SCHEDULE "A (1)"

Each contract year (July 1) employees, who are employed by the Company on that date, will be credited with one hundred eighty-four (184) hours of paid benefit leave. The vacation portion of this paid leave will be one hundred twenty-four (124) hours and must follow the guidelines set forth herein and in the vacation article of the CBA. Employees must have worked a full year on the job site in order to be eligible for vacation. Employees are to schedule their vacations in advance to coincide with the efficiency of the operation of the Company. Should conflict in scheduling arise, seniority will prevail. Assuming the vacation is reported by the employee and accrued vacation is available, vacation pay due will be paid at the same time as the pay for hours worked for the pay period in which the vacation was taken. Accrued unused vacation shall be paid on the employee's anniversary date.

The sick portion of this paid leave will be sixty (60) hours and must follow the guidelines set forth in the sick pay article of the CBA. The formula for paying sick leave for those employees who were employed on July 1 of each contract year shall be as follows:

Sick Pay

Employees who perform work during a pay period in accordance with the CBA will be paid 2.5 hours (60 hours ÷ 24 pay periods per year = 2.5 hours each pay period) of sick pay for each completed pay period.

The Parties have negotiated and agreed to the changes in the attached Schedule "A" and "A(1)" covering wage and fringe benefits under the provisions established in the collective bargaining agreement.

Teltara, Inc.
16100 No. Greenway-Hayden Loop
Suite 400
Scottsdale, AZ 85260-1778

BY: _Ralph B Wahlberg_  13 Jun 03
                    Date

_Sharon DeMartino_

Witness              16 Jun 03

Northeast Florida Public Employees Local 630
Laborers' International Union of
North America, AFL-CIO
550 Balmoral Cir. N., Suite 101
Jacksonville, FL 32218

BY: _____  6/11/03
    William A. Worsham        Date

_____
Witness

SCHEDULE "A"
## NORTHEAST FLORIDA PUBLIC EMPLOYEES LOCAL 630
## LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO
### AND TELTARA, Inc.
## FOR WORK PERFORMED UNDER THE SERVICE CONTRACT FO8651-99-D-0001 AT
### Eglin Air Force Base, Florida

| ITEM | CLASSIFICATION | EFFECTIVE RATE 7/1/03 | EFFECTIVE RATE 7/1/04 |
|---|---|---|---|
| WAGES | Housekeeping Aide I | $ 10.50 | $ 10.65 |
| | Group Leader | $ 10.90 | $ 11.05 |
| HEALTH AND WELFARE | | $ 2.85 per hour paid (Plan II) | $ 3.60 per hour paid (Plan II) |
| PENSION | | $ 1.15 per hour paid | $ 1.15 per hour paid |
| VACATION | | See Schedule A(1) | See Schedule A(1) |
| SICK LEAVE | | See Schedule A(1) | See Schedule A(1) |
| HOLIDAYS | | 10 days | 10 days |
| BEREAVEMENT | | 3 days/immediate family | 3 days/immediate family |
| MILEAGE | | $.30 per mile | $.30 per mile |

The parties have negotiated and agreed to the above changes in the Articles covering wages and fringe benefits under the provisions established in the Agreement. In the event there are conflicts between the language of the CBA and this Schedule A and A(1), the language of the Schedules shall apply.

SCHEDULE "A (1)"

Each contract year (July 1) employees, who are employed by the Company on that date, will be credited with one hundred eighty-four (184) hours of paid benefit leave. The vacation portion of this paid leave will be one hundred twenty-four (124) hours and must follow the guidelines set forth herein and in the vacation article of the CBA. Employees must have worked a full year on the job site in order to be eligible for vacation. Employees are to schedule their vacations in advance to coincide with the efficiency of the operation of the Company. Should conflict in scheduling arise, seniority will prevail. Assuming the vacation is reported by the employee and accrued vacation is available, vacation pay due will be paid at the same time as the pay for hours worked for the pay period in which the vacation was taken. Accrued unused vacation shall be paid on the employee's anniversary date.

The sick portion of this paid leave will be sixty (60) hours and must follow the guidelines set forth in the sick pay article of the CBA. The formula for paying sick leave for those employees who were employed on July 1 of each contract year shall be as follows:

Sick Pay

Employees who perform work during a pay period in accordance with the CBA will be paid 2.5 hours (60 hours ) 24 pay periods per year = 2.5 hours each pay period) of sick pay for each completed pay period.

The Parties have negotiated and agreed to the changes in the attached Schedule "A" and "A(1)" covering wage and fringe benefits under the provisions established in the collective bargaining agreement.

Teltara, Inc.
16100 No. Greenway-Hayden Loop
Suite 400
Scottsdale, AZ 85260-1778

Northeast Florida Public Employees Local 630
Laborers' International Union of
North America, AFL-CIO
550 Balmoral Cir. N., Suite 101
Jacksonville, FL 32218

BY: _Ralph B. Wahlberg_ 23Mar04
                              Date

BY: _____ 3/29/04
                              Date

Witness _____

_Marie Watson_ 3/29/04
Witness

